BRITTON *v.* ANDREWS et al.

*In an action against the principals, on an unaccepted bill drawn on them by their agent, the latter is a competent witness for the plaintiff.* Per Curiam : The rule that a witness inter-

ested in the subject of a suit, or in the record, is incompetent to testify on the side of his interest, is not, under the commercial law, applicable to agents and factors offered to prove acts done within the scope of their employment.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
        *Hoffman* and *F. B. Conrad*, for the plaintiff.   *Roselius*, for the appellants.
The judgment of the court was pronounced by

ROST, J.   The plaintiff seeks to recover from the defendants the amount of a bill of exchange, drawn on them by *Solomon Andrews*, of Natchez, payable to the order of said plaintiff, ten days after sight, for $5000.   He avers that the bill was protested for non-acceptance, and also for non-payment.   That the defendants were bound to accept and pay it, they having authorized the drawing of bills upon them by *Solomon Andrews*, who was then engaged in commercial business at Natchez, aided by, and in connection with, the defendants, purchasing cotton, either on his own account or on joint account with them, and drawing bills of exchange upon them; that, from time to time previous to the drawing of the bill sued upon, *Solomon Andrews* drew bills upon the defendants, a large amount of which the petitioner purchased from him, and all of which were accepted and paid by the defendants; that the bill sued upon was drawn by *Solomon Andrews*, in the course of his business in the purchase of cotton, which was shipped by him to the defendants; that, through the assistance and support of the defendants, *Solomon Andrews* had obtained credit, and was enabled to negotiate this and other bills.   The defendants' answer is a general denial, and a prayer for general relief.   On the trial the plaintiff admitted that the amount really due on the bill was $3,265 11, and the court having rendered judgment in his favor for that sum, the defendants appealed.

The evidence in the record, excluding the testimony of *Solomon Andrews*, satisfies us that the defendants gave out to the world that he was backed by them, and that they would accept his bills.   It is further shown that he was to share the commissions with them, upon all cottons shipped to their house by his procurement.   The fact that his account upon the books of the defendants was concealed under the name of *the Natchez Agency*, and the object of that concealment, have not been satisfactorily explained by them.   The legitimate inference from the want of explanation on their part is, that the truth, if it were ascertained, would make against them.   We are very much aided in this inference by the disclosure that the letters, written by the defendants to the *Agency*, were uniformly committed to the flames as soon as they had been read by *Solomon Andrews*, for which all sufficient reason he has been unable to produce them on the trial.   We consider it sufficiently proved that the *Natchez Agency* was really what its name implies, and that *Solomon Andrews* was the agent of the defendants at Natchez in their commercial business.   They are consequently bound for all bills drawn by him upon them in favor of *bona fide* holders.

The question which presents the greatest difficulty in this case, under the pleadings and the evidence adduced, is, whether the plaintiff presents himself before us as a *bona fide* holder.   He avers in his petition that the bill was drawn by *Solomon Andrews*, in the course of his business in the purchase of cotton shipped by him to the defendants, and relies to establish that fact on the testimony of the drawer himself.   The defendants have excepted to the introduction of his evidence, on the ground of interest.   The plaintiff has an un-

doubted right to the benefit of his testimony. So far from being incompetent to testify in the cause, the defendants themselves might have him sworn as their witness. The rule that a witness interested in the subject of the suit or in the record, is not competent to testify on the side of his interest, is not, under the commercial law, applicable to agents and factors, when offered to prove acts done within the scope of their employment. 1 Greenleaf on Evid. § 416. The allegation that this witness is unworthy of belief, comes with ill grace from the defendants, after having established him as a merchant, and passed him upon the public as honest and trust-worthy.

But taking all his testimony to be true, it does not prove that the whole amount of the bill sued upon, or even the amount of the judgment obtained upon it, was invested in cotton shipped to the defendants; that witness says that he drew a bill on the defendants, in favor of the plaintiff, for the sum of $2000, dated January the 26th, 1843, payable one day after sight; also anorher bill in favor of *McAlister, Watson & Co.*, on the said defendants, for the sum of $770 15, dated the 25th of January, at sight; and that, said bills were drawn contrary to instructions, the instructions of the defendants being to draw at ten days sight for any amount. Those two bills were protested, and on their return the witness included their amount in the bill now sued upon. He further states that the money received from the plaintiff for the two bills first protested, was used in the purchase of cotton for the benefit and account of the defendants; that the cotton so purchased and paid for, was shipped to them, and sold by them, in New Orleans, and that he never has received the proceeds of it.

This evidence would clearly establish the rights of the plaintiff to recover the sum of $2770 15; but no consideration is shown to have been given for the balance of the bill. It may be true that, if no suspicion attached to the possession of the holder, the amount of the bill not being for an unreasonable sum, he could not be held responsible for the appropriation of its proceeds by the agent of the defendants; but there are circumstances which throw doubts upon his good faith. His admission that only $3265 11 were due on the bill, shows that for the balance no consideration had passed. The evidence adduced by him does not support his claim even to that amount, and under this state of facts he has claimed in his petition the whole amount of the bill as due him for advances made to *Solomon Andrews*, of which the defendants have received the benefit.

The averment in his petition that all the bills purchased by him from *Solomon Andrews*, until the drawing of the one sued upon, were accepted and paid, is falsified by the evidence of the defendants. They have shown that he had presented bills from *Solomon Andrews* for acceptance, bearing dates from the 23d of January, 1843, to the 31st of the same month inclusively, amounting together to the sum of $17,020, which were all protested and remained unpaid. One of those bills, for $4250, bears even date with the one sued upon, was presented for acceptance and for payment on the same days, and at the same time protested. *Solomon Andrews* is shown to have been without means at that time, and if that bill was ever due it must be due still, and yet the plaintiff does not claim it, and admits that the sum of $3265 11 will balance his accounts with *Solomon Andrews*.

As the case is presented to us, there seems to be indirection and want of truth on both sides. Each of the parties alleges that the other has conspired with *Solomon Andrews* to defraud him, and *Solomon Andrews* himself shows no unwillingnesss to conspire with either or with both. In connexion with this part

of the case, it is not a little remarkable that this notorious person, having established himself in business at Memphis in the beginning of the present year, tendered his services there to the defendants and also to the plaintiff, stating that he would not have thought of doing so, but for the belief that the renewal of their commercial relations with him might be made profitable to both. The defendants had a direct interest in placing their connexion with *Solomon Andrews* on such a footing as would enable them to receive the profits and avoid the losses that might result from their transactions with him, and we have no doubt that such was their object in establishing *the Natchez Agency*, and in causing their letters to that agency to be burnt as soon as they had been read. Their case is utterly devoid of equity. The interest of the plaintiff in assisting *Solomon Andrews* to defraud his brothers is not so apparent, and we incline to the belief that his conduct in these transactions may be satisfactorily explained by some local usage with regard to advances on bills, which has not been shown. As the case now stands, it is difficult to apply to it the law of merchants, which we hold to be the law of honor. The issue presented by the pleadings and the arguments of counsel, is one of fraud rather than of commercial use; and we believe therefore that the ends of justice will be best answered, by remanding the case to have that issue tried before a jury.

For the reasons assigned, it is ordered that the judgment be reversed, and the case remanded to be proceeded in according to law, with leave to both parties to amend, and directions to the court to cause a jury to be empanelled and sworn for the trial of it; the plaintiff and appellee paying the costs of this appeal.